FILED
July 19, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002786922

**6**

BYRON LEE LYNCH, ESQ.
State Bar Number 74729
PO Box 685
Shasta Lake, CA 96019
Tel:        (530) 244-1235
E-mail:        bllynch@me.com

MICHAEL P. DACQUISTO, ESQ.
State Bar Number 84894
1901 Court Street
Redding, California 96001
Tel:        (530) 244-6007
Fax:        (530) 244-0907
E-mail:        mdacquisto@charter.net

Attorneys for John Reger, Chapter 7 Trustee

### UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | NO. 09-20140-A-7 |
| **SHASTA REGIONAL MEDICAL CENTER, LLC** | DCN:        MPD-8 |
| _____ Debtor _____/ | Date:        **August 23, 2010**<br>Time:        **9:00 a.m.**<br>Place:        **Courtroom 28 Dept. A**<br>        **501 I Street, 7th Floor**<br>        **Sacramento, CA 95814** |

### TRUSTEE'S MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT AND AGREEMENT TO TERMINATE CC&RS BETWEEN CONTINENTAL STREET PROPERTIES, LP AND THE TRUSTEE AND/OR FOR ORDER APPROVING SALE OF ESTATE PROPERTY TO CONTINENTAL STREET PROPERTIES, LP

John Reger (hereafter "Reger") the chapter 7 trustee in this involuntary proceeding requests an order approving a Settlement Agreement and Agreement to Terminate CC&Rs (hereafter "Agreement") between Continental Street Properties, LP (hereafter "Buyer") and Reger. This order is requested as approval of a compromise between Reger and the Buyer and/or as approval of a sale of estate property to the Buyer.

1.        Facts of the case.

On or about August 22, 2007 the Buyer purchased from the debtor certain real

property located on Liberty Street in Redding, Shasta County, California, bearing Shasta County APN 101-430-009, 010, 011, 012.

As part of that sale, the debtor required that a declaration of covenants, conditions and restrictions (the "CC&Rs") be recorded simultaneous with the deed provided to the Buyer. The CC&Rs were recorded in the official records of the County of Shasta as Instrument No. 2007-0038996.

The CC&Rs contained, among other things, prohibitions on certain uses of the Liberty Street property (the "Prohibited Uses"), leasing restrictions (the "Leasing Restrictions"), provided that the debtor reserved a right to re-purchase the Liberty Street Property under certain conditions contained in the CC&Rs (the "Right to Re-purchase"), and provided that the debtor held a right of first refusal under certain conditions contained in the CC&Rs (the "Right of First Refusal").

Because the debtor has ceased its operations, the Buyer contends the CC&Rs, by their own terms, are no longer in effect. The bankruptcy estate disputes that contention. To resolve this dispute the Buyer is willing to purchase all of the debtor's right, title and interest in the CC&Rs from the bankruptcy estate in return for payment of the sum of Thirty Thousand Dollars ($30,000.00) net to the bankruptcy estate. All costs of sale are being paid by the Buyer. In return for that payment, after obtaining bankruptcy court approval of the Agreement, Reger would be required to sign a Termination of Declaration of Covenants, Conditions and Restrictions which would end all of the CC&Rs that were granted to the debtor as part of the Liberty Street Property sale to the Buyer.

A true and correct copy of the Settlement Agreement and Agreement to Terminate CC&Rs is filed herewith as Exhibit A. A true and correct copy of the Termination of Declaration of Covenants, Conditions and Restrictions is filed herewith as Exhibit B.

Based on Reger's analysis, the CC&Rs being terminated have no independent value to the bankruptcy estate. They do not generate any money. This proposed compromise/sale to the Buyer is the best disposition of this asset. It will allow the bankruptcy estate to receive $30,000.00 that it would not otherwise have received.

1      **2.      Memorandum of Points and Authorities.**

2      **A.      The court has broad discretion to approve a compromise and**

3      **settlement between the estate and the Buyer.**

4      Federal Rules of Bankruptcy Procedure, Rule 9019(a) provides the trustee may

5      seek court approval of a compromise after a hearing noticed to all creditors and the

6      debtor. The court has wide discretion to approve compromises between the estate,

7      creditors and the debtor. When deciding whether to approve a settlement agreement

8      under Rule 9019, this court must consider the following factors: (1) the probability of

9      success in the litigation or matter being settled; (2) the difficulties, if any, to be

10     encountered in the matter of collection; (3) the complexity of the litigation or matter being

11     settled, together with the expense, inconvenience and delay necessarily attendant to the

12     litigation or matter being settled; and (4) the paramount interests of the creditors with a

13     proper deference to their reasonable opinions in the matter. In re A&C Properties, 784

14     F.2d 1377, 1381 (9th Cir. 1986). Each factor is discussed below.

15     **1.      The probability of success in the litigation or matter being settled.**

16     The probability of success is unclear at this time. To the extent there is a

17     disagreement between the estate and the Buyer concerning whether the CC&Rs on the

18     Liberty Street Property are still in effect, the outcome of any potential litigation on that

19     issue would require extensive discovery on both liability and damages. At this time no

20     clear determination can be made.

21     **2.      The difficulties, if any, to be encountered in the matter of collection.**

22     If the estate prevailed there would be no problem collecting any money awarded,

23     assuming the estate could establish damages incurred.

24     **3.      The complexity of the litigation or matter being settled together with**

25     **the expense, inconvenience and delay necessarily attend to the litigation or matter**

26     **being settled.**

27     Potential litigation between the estate and the Buyer would be time consuming and

28     expensive. Assuming liability could be established, the question of what damages the

1  estate sustained pervades the entire matter. It would be difficult and expensive to locate
2  many of the witnesses who were working for the debtor at the time of the prior sale in
3  2007. Because the debtor stopped doing business in October 2008, many of those
4  persons are no longer working for the new entity and/or have left the Redding area. All in
5  all this potential litigation would be time consuming and very expensive.

6      **4.    The paramount interests of the creditors with proper deference to**
7  **their reasonable opinions.**

8      This proposed resolution will generate $30,000.00, net to the bankruptcy estate.
9  That will increase the funds available to pay creditors. There is no known harm or
10  prejudice to any creditor from approval of this proposed compromise/sale.

11     **B.    This court has authority to authorize a sale of assets outside the**
12  **ordinary course of business under 11 U.S.C.§363(b)(1).**

13     Title 11 U.S.C. §363(b)(1) provides:

14          "The trustee, after notice and a hearing, may use, sell, or
15          lease, other than in the ordinary course of business, property
16          of the estate." (11 U.S.C. §363(b)(1))

17     This court's power to authorize the proposed sale under 11 U.S.C. § 363(b) is to
18  be exercised in its discretion. In re Lionel Corp. 722 F.2d 1063, 1069 (2d Cir. 1983); In re
19  Coastal Cable T.V., Inc. 24 B.R. 609, 611 (Bankr. 1st Cir. 1982), rev. on other grounds,
20  709 F.2d 762 (1st Cir. 1983); In re Baldwin United Corp. 43 B.R. 888, 905 (Bankr. S.D.
21  (Ohio 1984); In re Ancor Exploration Co. 30 B.R. 803, 808 (Bankr. N.D. Okla. 1983).

22     In Lionel, supra, a standard was established against which to measure the court's
23  judicial exercise of its discretionary powers to approve a sale of assets outside the
24  ordinary course of business under 11 U.S.C. §363(b). The Lionel court held that for the
25  court to exercise proper discretion, a good business reason must be shown. Further, the
26  court stated the discretionary power was available to further the interests of the debtor, its
27  creditors, and its equity security holders. Id. at 1071.

28     The Lionel decision was adopted by the Ninth Circuit Bankruptcy Appellate Panel

in <u>Walter v. Sunwest Bank (In re Walter)</u>, 83 B.R. 14 (9th Cir BAP 1988), which approved language that the trustee must demonstrate a good business reason for selling the property.

The case of <u>In re Mickey Thompson Entertainment Group, Inc.</u> 292 B.R. 415 (9th Cir BAP 2003) held that in certain situations a trustee's request to compromise a matter and obtain court approval also involves interests that would allow for a potential sale of that asset. In those cases the court must consider both the factors necessary to support approval of a compromise and the factors necessary to support sale of the asset.

To the extent the court considers this agreement to be a sale of estate property to the Buyer, instead of a compromise, there are sound business reasons for selling the asset. Reger will be able to rid the estate of an asset that has little or no value to any person or entity other than the Buyer and will generate $30,000.00 for the bankruptcy estate. This amount of money is fair and reasonable. To the extent any other party wishes to overbid, there will be more funds generated for the bankruptcy estate. Under these circumstances and facts this court's approval of the proposed sale would be proper.

**3.     Conclusion.**

Based on the legal standards set forth and the declaration of John Reger filed herewith this court should approve the motion. Whether viewed as a compromise/settlement directly with the Buyer or viewed as a sale to the Buyer or a third party, approval will result in $30,000.00 coming into the estate. Therefore Reger requests the following relief:

1.     An order approving the Settlement Agreement and Agreement to Terminate CC&Rs between Reger and the Buyer filed herewith as Exhibit A.

2.     An order approving the Termination of Declaration of Covenants, Conditions and Restrictions between Reger and the Buyer filed herewith as Exhibit B.

3.     An order approving the qualification, bidding, overbidding and payment procedures set forth in the notice of hearing filed herewith for the Buyer or any third

parties interested in purchasing these assets;

4.     In the event there are qualified overbids from the Buyer or any third party, an order approving the sale of these assets to the highest bidder, subject to any liens that may exist on them. If the Buyer is the highest bidder, for more than $30,000.00, an order approving sale of these assets to the Buyer and an order approving the Settlement Agreement between Reger and the Buyer in the form filed herewith except for the money being paid increased to the amount of the Buyer's highest bid. If there are no bids higher than $30,000.00, an order approving the Settlement Agreement and Agreement to Terminate CC&Rs and the Termination of Declaration of Covenants, Conditions and Restrictions between Reger and the Buyer;

5.     An order authorizing Reger to sign all necessary documents to complete this transaction;

6.     Any further orders the court feels are appropriate.

Date:  July 16, 2010

/s/ Michael P. Dacquisto_____
MICHAEL P. DACQUISTO,
Attorney for Chapter 7 Trustee John Reger